**GROUP EXHIBIT A**

**BERKSHIRE HATHAWAY | Chicago**
HomeServices

**Exclusive Right To Sell Agreement**

Thank you for giving Berkshire Hathaway HomeServices Chicago ("BHHS Chicago") the opportunity to represent you. BHHS Chicago is a full-service real estate company offering the services you will need for a successful transaction. This Agreement explains our relationship and how we will function under Illinois law. In consideration of our services, you hereby grant us the exclusive right to represent you in the sale of your property located at:

3817 S Ellis Ave unit 302,  Chicago, IL 60653

5%                         (the "Property").

You agree to cooperate fully with us, to inform us promptly and in writing of any inquiries about the Property, to conduct all negotiations through us, and to abide by the following terms and conditions:

1. **Commission:** If during the term of this Agreement you sell or exchange this Property by entering into a contract that you, we, or any other party obtains from a ready, willing, and able purchaser for the sale or exchange of the Property, you shall pay BHHS Chicago a commission of $495 and ~~6%~~ of the purchase price. The commission is due on or before the closing date set forth in the purchase agreement or at the time possession is given in the event of an installment sale. We are also entitled to the commission if a purchaser, to whom the Property was offered during the term of this Agreement, directly or indirectly within one (1) year after termination of this Agreement, enters into a contract to purchase the Property and the sale subsequently closes. However, if after termination of this Agreement, you enter into an exclusive listing agreement with another real estate broker, no commission will be due to BHHS Chicago. No commission is due if the sale is not closed due to purchaser's default. Any change in the amount or the time of commission payment shall not be binding unless made in writing and signed by you and the Branch Manager.

2. **Price:** We will use our best efforts to achieve a sales price of $ 200,000                         or any other amount that you agree to accept.

3. **Seller's Designated Agent:** Pursuant to Illinois law, BHHS Chicago hereby designates Adam Wolverton                  as your exclusive agent under this Agreement (your "Designated Agent"). You understand and agree that your Designated Agent may represent other clients at the same time as he/she represents you. If your Designated Agent is unavailable to work with you, we will arrange for another agent to represent you.

4. **Our Services:** In marketing your Property, we will display information on various internet websites available to consumers and other licensees, unless you give us written direction to exclude your Property from such websites. You authorize us to show the Property to prospective purchasers at convenient times, display signs, advertise the Property, furnish information on the Property to participants of the local multiple listing service, place a lockbox on the Property if applicable, cooperate with other brokers, and compensate them in an amount no greater than 50% of the percentage or monthly rental commission. Your Designated Agent will accept delivery of and present to you all offers and counteroffers to buy or lease your Property, assist you in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to offers and counteroffers until a sales contract or lease is signed and all contingencies are satisfied or waived, and answer your questions relating to the offers, counteroffers, notices, and contingencies, unless answering the questions is precluded by law. Our duty is to market the Property; we are not responsible for its management, maintenance, upkeep, repair, inspection, custody, care or control. We assume no liability for any personal property on or in the Property, or for the failure of any systems, nor for any personal injuries sustained on the Property.

5. **Rental:** If you rent the Property by entering into a lease that you, we, or any other party obtains from a ready, willing, and able tenant during the term of this Agreement, or if within six (6) months after termination of this Agreement you enter into a lease with anyone to whom it was offered during the term of this Agreement, you agree to pay BHHS Chicago, upon execution of the Lease by Tenant or at the time of possession, whichever is first in time, a flat dollar commission of $100 and:
   - One and one quarter (1¼) month's rent for the first year and
   - One-half (1/2) of one (1) month's rent for each year thereafter.

   If the term of the lease is extended, or if the tenant occupies additional space, whether provided for by the lease or subsequent modifications of the lease, you agree to pay BHHS Chicago additional commission of one half (1/2) of one (1) month's rent for each year thereafter. This additional commission is due upon execution of the extension, agreement for additional space, and/or execution of a new lease between you and the tenant. If after termination of this Agreement, you enter into an exclusive lease agreement with another real estate broker, no commission is due under this Agreement. If the tenant subsequently purchases the property during the lease, any extension to the lease, or within one year after the expiration of the lease or extension, you hereby agree to pay a commission as set forth in Paragraph 1 above.

6. **Termination and Cancellation:** This Agreement terminates one (1) year from date entered below or one (1) year from the date the Property was marketed to the public, whichever is later in time (the "Term"), and until then is irrevocable and binding. If we agree to cancel this Agreement at any time before the end of the Term, you agree to reimburse us for all actual marketing costs, as accounted for in writing, plus a cancellation fee of $500, payable before cancellation is effective.

7. **Compliance with Fair Housing Laws:** You acknowledge that it is illegal for either you or us to refuse to display or sell to any person because of race, color, religion, national origin, age, sex, ancestry, disability, marital or familial status, source of income, military status or unfavorable discharge from military, sexual orientation, gender identity or Order of Protection status, and agree to follow all local, state and federal fair housing laws.

8. **Special Assessments/Special Service Areas:** There are no special assessments relative to this property except _____ _____, and property is ☐ is not ☒ in a Special Service Area. Seller agrees to notify BHHS Chicago upon receipt of any notice of special assessment and/or any notice that the real estate is in a designated Special Service Area.

9. **Indemnity/Dispute Resolution:** You agree to indemnify and hold us harmless from all claims, disputes, litigation, judgments, and costs (including reasonable attorney's fees) arising from any incorrect information or misrepresentations supplied by you or from any material facts, including latent defects, that are known to you that you fail to disclose. We agree to work together to try to resolve any controversy or claim between us regarding to this Agreement, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement). We also agree that if we cannot resolve differences we will submit all controversies relating to this Agreement to binding arbitration through the facilities of the American Arbitration Association or JAMS in Chicago, Illinois, with costs to be shared equally. This agreement to arbitrate will construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq. While either party shall have all the rights and benefits of arbitration, <u>both parties are giving up the right to litigate such claims and disputes in a court or jury trial</u>.

The results, determinations, findings, judgments and/or awards rendered through such arbitration shall be final and binding on us both and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction. Neither of us shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity. For controversies and claims that do not exceed the applicable jurisdictional limit of small claims court, either party may bring such claims in small claims court in lieu of arbitration. Additional information and resources regarding the use of arbitration may be found at www.adr.org.

10. Copyright: You agree that we own all copyrights, patents, trade secrets and other intellectual property rights in anything created or developed in conjunction with the marketing of this Property. You specifically authorize us to use for any purposes any and all information obtained by or provided to us pursuant to this Agreement, including contained in this Agreement, and any publicly available information concerning the price and terms of the sale of the Property, length of time the Property is on the market, and any other information relating to the Property, before and after the sale or, in the event there is not a sale, after this Agreement has terminated.

11. Relocation: Would you like to receive information about your destination city?   Yes ☐   No ☑
12. Home Warranty Plan: Would you like information about a home warranty plan? Yes ☐   No ☑
13. Title Insurance: The choice of a title insurance provider is yours. Fort Dearborn Title is a title insurance provider affiliated with BHHS Chicago (as disclosed in the previously-provided Affiliated Business Arrangement Disclosure) and is available to provide title insurance in your transaction. If you have chosen a provider, please note your intent below. By selecting an option below you are simply indicating your intent and are not committing to make a purchase of title insurance. For title insurance on my transaction I intend to use:   ☐ Fort Dearborn Title   ☑ Other   ☐ Undecided
14. Disclosures: You acknowledge that attached to this Agreement and made a part of it are the following disclosures which you agree to sign:
    - Dual Agency Disclosure
    - Affiliated Business Arrangement Disclosure
    - Residential Real Property Act Disclosure
    - Lead-Based Paint Disclosure: *if your house was built before 1978*
    - Radon Disclosure
    - Anti-Fraud Disclosure

15. Real Estate Taxes: $ 2,071    Tax Year: 2022    Parking Space Taxes $ _____    Tax Year _____
16. PIN # 17351011254006    Parking Space PIN# _____
    Homeowner's Exemption: Yes ☐   No ☑   Senior Citizen's Homestead Exemption: Yes ☐   No ☑
    Senior Freeze Exemption: Yes ☐   No ☑
17. Monthly Condominium Assessment: (If applicable) $ approx. 350    Seller agrees to advise BHHS Chicago of any notice of change in the Assessment within three (3) business days of receipt of such notice.
18. Marketing Notice. BHHS Chicago and its affiliated HomeServices of America family of companies are providing this Notice. BHHS Chicago has title insurance, mortgage, personal lines insurance and home warranty affiliates that are committed to the highest quality of service. To enable you to receive information from these excellent companies, BHHS Chicago makes your contact information available to them. Rest assured we do <u>not</u> share your financial information with anyone. If you choose, however, you may limit these companies' marketing their products or services to you unless and until you tell us to change your choice. To limit marketing offers, contact us at  DoNotContact@BHHSChicago.com.
19. Recordings. You understand that your recording or transmitting of any audio via your recording devices in your Property may result in violation of Illinois and/or federal wiretapping laws. You hereby release, hold harmless, and indemnify Broker, Designated Agent, and Broker's agents and employees from any liability which may result from your recording or transmitting in the Property. Further, you understand that while potential buyers should not photograph or videotape in the Property without your prior written permission, such recordings or transmissions may occur. You agree to remove all personal items you do not wish to have recorded or transmitted. You hereby release, hold harmless, and indemnify Broker, Designated Agent, and Broker's agents and employees from any liability with may result from potential buyers' recordings or transmissions of the Property.

Accepted and Agreed as of this _____ day of _____, 20 _____.

| Aja Carr Favors, not individually but as Chapter 7 Trustee | Yvonne Mortimer |
|---|---|
| Print Seller(s) Name(s) | Print Branch Manager's Name |
| | |
| Seller's Signature | Branch Manager's Signature |
| | Adam Wolverton |
| Seller's Signature | Print Designated Agent Name |
| reed@hzhlaw.com | 312.888.9541 | 53 W Jackson Blvd, Suite 1301 |
| Email | Phone Number | Seller's Street Address & Town |
| 3817 S Ellis Ave unit 302, Chicago, IL 60653 | | |

"Property" Address & Town

**BERKSHIRE HATHAWAY | Chicago**
HomeServices

## Dual Agency Disclosure

Your Designated Agent, Adam Wolverton
(*Print Agent Name*)

and any subsequent designated agent, may undertake a dual representation (represent both the seller or landlord and the buyer or tenant) for the sale or lease of property. The undersigned acknowledge they were informed of the possibility of this type of representation. Before signing this document, please read the following:

Representing more than one party to a transaction presents a conflict of interest since both clients may rely upon Licensee's advice and the clients' respective interests may be adverse to each other. Licensee will undertake this representation only with the written consent of ALL clients in the transaction. Any agreement between the clients as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interests and on their own behalf. You acknowledge that Licensee has explained the implications of dual representation, including the risks involved, and understand that you have been advised to seek independent advice from your advisors or attorneys before signing any documents in this transaction.

WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS A DUAL AGENT

1. Treat all clients honestly
2. Provide information about the property to the buyer or tenant
3. Disclose all latent material defects in the property that are known to Licensee
4. Disclose financial qualification of the buyer or tenant to the seller or landlord
5. Explain real estate terms
6. Help the buyer or tenant to arrange for property inspections
7. Explain closing costs and procedures
8. Help the buyer compare financing alternatives
9. Provide information about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer

WHAT A LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT

1. Confidential information that Licensee may know about the clients, without that client's permission. No other licensee will be able to reveal the other party's confidential information to you.
2. The price or terms the seller or landlord will take, other than the listing price, without permission of the seller or landlord. No other licensee will be able to reveal this information to you.
3. The price or terms the buyer or tenant is willing to pay without permission of the buyer or tenant. No other licensee will be able to reveal this information to you.
4. A recommended or suggested price or terms the buyer or tenant should offer
5. A recommended or suggested price or terms the seller or landlord should counter with or accept

[✔] I ACCEPT DUAL AGENCY: By signing below, you acknowledge that you have read and understand this form and voluntarily consent to the Licensee acting as a dual agent (that is, to represent BOTH the seller or landlord and the buyer or tenant) should that become necessary. You further acknowledge that this Disclosure was presented when you entered into the brokerage agreement.

[ ] I DECLINE DUAL AGENCY: By signing below, you acknowledge that you have read and understand this form and voluntarily decline to give your consent to the Licensee to act as a dual agent. You further acknowledge that this Disclosure was presented when you entered into the brokerage agreement.

Aja Carr Favors, not individually but as Chapter 7 Trustee
_____
Print Name(s)

_____    _____
Signature                          Date

_____    _____
Signature                          Date

Dual Agency Disclosure/BHHS Chicago                                    01012020

# Affiliated Business Arrangement Disclosure Statement

To: _Aja Carr Favors, not individually but as Ch 7 Trustee_  Property: _3817 S Ellis Ave unit 302, Chicago, IL 60653_

From: _BHHS Chicago_  Date: _____

This is to give you notice that HomeServices of Illinois, LLC doing business as Berkshire Hathaway HomeServices Chicago and Berkshire Hathaway HomeServices KoenigRubloff Realty Group, HomeServices Relocation, LLC, Prosperity Home Mortgage, LLC, HomeServices Insurance, Inc. ("HSI"), Fort Dearborn Land Title Company, LLC doing business as Fort Dearborn Title ("Fort Dearborn Title") and Vanderbilt Mortgage and Finance Inc. doing business as Silverton Mortgage ("Silverton Mortgage") are part of a family of companies (the "Affiliated Companies") owned by Berkshire Hathaway, Inc. ("Berkshire Hathaway"), and each may refer to you the services of another. HomeServices of Illinois, LLC, HomeServices Relocation, LLC, Prosperity Home Mortgage, LLC, HSI and Fort Dearborn Title are each wholly owned either directly or indirectly by HomeServices of America, Inc., a Berkshire Hathaway affiliate. Silverton Mortgage is a wholly-owned indirect subsidiary of Clayton Homes, a Berkshire Hathaway affiliate. Because of these relationships, the referral of a customer (including you) by any of the Affiliated Companies to another may provide the referring company, its affiliates, and/or their employees with a financial or other benefit.

In addition, while HomeServices of Illinois, LLC is not affiliated with Cinch Home Services, Inc. doing business as Cinch Home Services ("Cinch Home Services"), it does advertise them for a fixed service fee.

Set forth below is the estimated charge or range of charges for each of the services listed. You are NOT required to use any of these service providers as a condition of the sale of the subject property or to obtain access to any settlement service.

**THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| Service Provider | Service Provided | Charge or Range of Charges |
|---|---|---|
| Berkshire Hathaway HomeServices Chicago / KoenigRubloff Realty Group | Broker's Commission | $495 plus a percentage of the sales price, ranging from 6% to 10% |
| HomeServices Relocation, LLC | Relocation Services | Fees paid by employer or real estate broker |
| Prosperity Home Mortgage, LLC | Loan Origination Fee | $0 - $1,199 (2% of loan amount on some bond products) |
| | Appraisal | $425 - $1,102 |
| | Third Party Fees | $33 - $215 (credit report, tax service fee, flood cert fee) |
| Fort Dearborn Title (IL) | Lender's Policy | $500 for each mortgage plus $125 for protection between issuance of the title commitment and closing. Endorsements are $175 each; chain of title is $250; Predatory Lending Certification (if required) is $50. |
| | Owner's Policy | $1,740 for policies $200K and under, plus $20 for each additional $10K or less of coverage up to $500K. $2,360 for policies $500,001 to $510K, plus $20 for each additional $10K or less of coverage up to $1M. For policies over $1M, $3,325 plus $20 for each additional $10K of coverage over $1M. A $125 commitment update fee is charged on all owner's policies. |
| | Closing Fee | $1,380 to $1,680 for purchase price up to $500K. Add $50 per each additional $50K, or part thereof, in purchase price over $500K; plus expenses incurred and $40 for each wire, $25 for each overnight package sent, and $40 for each loan package received. $225 will be added to the closing fee for each additional mortgage. |
| HomeServices Insurance, Inc.* | Homeowner's Insurance | $200 - $2,000 annual premium, depending on product and associated risk assessments (e.g., age of home, credit score, past claims of the insured, etc.) |
| Silverton Mortgage | Loan Origination Fee | 0 – 2.75% of the loan amount (includes third party fees) |
| | Appraisal | $475 - $900 |
| Cinch Home Services | Home Warranty | $359 - $2,000, depending on property and coverage options |

ACKNOWLEDGEMENT: I/we have read this disclosure form and understand that the Affiliated Companies may refer me/us to purchase the above-described settlement service(s) from one another and that any such referrals may provide the referring company, its affiliates, and/or their employees with a financial or other benefit.

_____   _____
Signature                    (Date)       Signature                    (Date)

* In rare cases, your insurance policy may instead be issued by Long & Foster Insurance Agency, Inc., an affiliate of HSI, or under another of its trade names. HSI's trade names include: Edina Realty Insurance Agency, Home Team Insurance, HomeServices Insurance Agency, InsuranceSouth, Long Insurance Group, PCG Agencies, PCG Insurance Agency, ReeceNichols Insurance and Trident Insurance Agency.

HSOA-00009545.18                                                    BHHS Chicago (IL) Rev. 01/27/2021

**BERKSHIRE HATHAWAY | Chicago HomeServices**     **ANTI-FRAUD DISCLOSURE TO CONSUMERS**

# WIRE FRAUD WARNING TO CONSUMERS

We provide you with this disclosure to alert you to a serious nationwide threat of fraud in real estate transactions.

EMAILS ATTEMPTING TO INDUCE FRAUDULENT WIRE TRANSFERS OF YOUR FUNDS ARE COMMON AND MAY APPEAR TO COME FROM A TRUSTED SOURCE. Such requests, even if they seem legitimate, may be part of a scheme to defraud you.

Electronic communications, such as email, text messages and social media messaging, are neither secure nor confidential. While Berkshire Hathaway HomeServices Chicago ("BHHS Chicago") has adopted policies and procedures to aid in avoiding fraud, even the best security protections can still be bypassed by unauthorized parties. Therefore, by this Disclosure, BHHS Chicago is providing you with information on what to do if you receive instructions to transfer funds.

NEVER TRANSFER FUNDS BASED ON EMAILED WIRE INSTRUCTIONS <u>WITHOUT</u> <u>VERIFYING THE INSTRUCTIONS BY PHONE</u> AS SPECIFIED BELOW.

If you receive any electronic communication providing wire instructions for the transfer of funds, EVEN IF THE COMMUNICATION APPEARS TO BE FROM BHHS Chicago OR YOUR REAL ESTATE AGENT, do not respond unless you have verified the information as follows:

- To verify instructions related to wiring earnest money, call the BHHS Chicago Accounting Department at 847- 853-4030.

- To verify instructions related to wiring closing funds to Fort Dearborn Title, call the Fort Dearborn Title at 847-853-6050.

- To verify instructions related to wiring closing funds to any other title company, call that company using a phone number you look up yourself, not a phone number in the email.

ACKNOWLEDGMENT:

I/we have read this Anti-Fraud Disclosure Statement and understand that if I receive any electronic communication appearing to come from BHHS Chicago or my real estate agent with instructions to transfer funds, I will verify the validity of the information before following the instructions.

Acknowledged as of this _____ day of _____, 20 _____

Aja Carr Favors, not individually but as Ch 7 Trustee
Print Name                                                          Print Name

_____                    _____
Signature                                                              Signature




# Illinois REALTORS®
## RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT
### (765 ILCS 77/35)

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES' RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW, SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY THE SELLER CREATES LEGAL OBLIGATIONS ON THE SELLER; THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: 3817 S Ellis Ave unit 302
City, State & Zip Code: Chicago, IL 60653
Seller's Name: Aja Carr Favors, not individually but as Ch 7 Trustee

This Report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _____, 20___, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form, a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect), or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| # | YES | NO | N/A | Statement |
|---|-----|----|----|-----------|
| 1. | ☐ | ☐ | ☑ | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | ☐ | ☑ | ☐ | I am aware of flooding or recurring leakage problems in the crawl space or basement. |
| 3. | ☐ | ☑ | ☐ | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | ☐ | ☑ | ☐ | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | ☐ | ☑ | ☐ | I am aware of leaks or material defects in the roof, ceilings, or chimney. |
| 6. | ☐ | ☑ | ☐ | I am aware of material defects in the walls, windows, doors, or floors. |
| 7. | ☐ | ☑ | ☐ | I am aware of material defects in the electrical system. |
| 8. | ☐ | ☑ | ☐ | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | ☐ | ☑ | ☐ | I am aware of material defects in the well or well equipment. |
| 10. | ☐ | ☑ | ☐ | I am aware of unsafe conditions in the drinking water. |
| 11. | ☐ | ☑ | ☐ | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | ☐ | ☑ | ☐ | I am aware of material defects in the fireplace or wood burning stove. |
| 13. | ☐ | ☑ | ☐ | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | ☐ | ☑ | ☐ | I am aware of unsafe concentrations of radon on the premises. |
| 15. | ☐ | ☑ | ☐ | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | ☐ | ☑ | ☐ | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | ☐ | ☑ | ☐ | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | ☐ | ☑ | ☐ | I am aware of current infestations of termites or other wood boring insects. |
| 19. | ☐ | ☑ | ☐ | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | ☐ | ☑ | ☐ | I am aware of underground fuel storage tanks on the property. |
| 21. | ☐ | ☑ | ☐ | I am aware of boundary or lot line disputes. |
| 22. | ☐ | ☑ | ☐ | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |
| 23. | ☐ | ☑ | ☐ | I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act. |

**Note:** These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

**Note:** These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

FORM 108 (7/28/16) COPYRIGHT ILLINOIS REALTORS®        Page 1 of 4

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:

_____
Check here if additional pages used: _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _____ Date: _____

Seller: _____ Date: _____

THE PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. THE PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____ Date: _____ Time: _____

Prospective Buyer: _____ Date: _____ Time: _____

A COPY OF ARTICLE 2 OF THE RESIDENTIAL REAL PROPERTY DISCLOSURE ACT IS AFFIXED HERETO AND SHOULD BE REVIEWED BY PROSPECTIVE BUYER.

# RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
## ARTICLE 2: DISCLOSURES
**765 ILCS 77/5 *et seq.***

**Section 5. Definitions:** As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

**"Residential real property"** means real property improved with not less than one nor more than four residential dwelling units: units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit. The term includes a manufactured home as defined in subdivision (53) of Section 9-102 of the Uniform Commercial Code that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act.

**"Seller"** means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

**"Prospective buyer"** means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

**Section 10. Applicability.** Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale-contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

**Section 15. Applicability; Exceptions.** The provisions of this Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgment, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgment or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

**Section 20. Disclosure Report; Completion; Time of Delivery.** A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

**Section 25. Liability of seller.**

(a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy, or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

**Section 30. Disclosure supplement**. If, prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

**Section 35. Disclosure report form.** . . .[omitted]

**Section 40. Material defect**. If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

**Section 45. Effect of Act on Other Statutes or Common Law.** This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

**Section 50. Disclosure Report; Method of Delivery.** Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

(1) personal or facsimile delivery to the prospective buyer;

(2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement; or

(3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to an authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

**Section 55.  Violations and damages**.  If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

**Section 60.  Limitation of Action.**  No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

**Section 65.  Disclosure Report Form; Contents; Copy of Act.**  A copy of this Act, excluding Section 35, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Date provided to Buyer: _____

Seller: _____

 

# ILLINOIS REALTORS®
## DISCLOSURE OF INFORMATION AND ACKNOWLEDGEMENT
### LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Property Address:** 3817 S Ellis Ave unit 302, Chicago, IL 60653

**Seller's Disclosure (initial)**

_____ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

_____ (c) Purchaser has received copies of all information listed above.

_____ (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home*.

_____ (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

_AW_ (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

Seller _____  Date _____  Purchaser _____  Date _____

Seller _____  Date _____  Purchaser _____  Date _____

Agent _Adam Wolnik_  Date _6/1/23_  Agent _____  Date _____

(This disclosure form should be attached to the Contract to Purchase)
FORM 420 (7/28/16) **COPYRIGHT ILLINOIS REALTORS®**                                                                                 1/1




# ILLINOIS REALTORS®
## DISCLOSURE OF INFORMATION ON RADON HAZARDS
(For Residential Real Property Sales or Purchases)

**Radon Warning Statement**

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure (initial each of the following which applies)**

_____ (a)   Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b)   Seller has provided the purchaser with the most current records and reports pertaining to elevated radon concentrations within the dwelling.

_____ (c)   Seller either has no knowledge of elevated radon concentrations in the dwelling or prior elevated radon concentrations have been mitigated or remediated.

_____ (d)   Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment (initial each of the following which applies)**

_____ (e)   Purchaser has received copies of all information listed above.

_____ (f)   Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement (initial IF APPLICABLE)**

_AW_ (g)   Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

**Seller** _____   **Date** _____

**Seller** _____   **Date** _____

**Purchaser** _____   **Date** _____

**Purchaser** _____   **Date** _____

**Agent** _Adam Wolnski_   **Date** _6/1/23_

**Agent** _____   **Date** _____

**Property Address:** 3817 S Ellis Ave unit 302

**City, State, Zip Code:** Chicago, IL 60653

FORM 422 (7/28/16) **COPYRIGHT ILLINOIS REALTORS®**   1/1

**BERKSHIRE HATHAWAY | Chicago**
HomeServices

**Exclusive Right To Sell Agreement**

Thank you for giving Berkshire Hathaway HomeServices Chicago ("BHHS Chicago") the opportunity to represent you. BHHS Chicago is a full-service real estate company offering the services you will need for a successful transaction. This Agreement explains our relationship and how we will function under Illinois law. In consideration of our services, you hereby grant us the exclusive right to represent you in the sale of your property located at:

8 W Monroe St #P-81 Chicago, IL 60603

5%   (the "Property").

You agree to cooperate fully with us, to inform us promptly and in writing of any inquiries about the Property, to conduct all negotiations through us, and to abide by the following terms and conditions:

1. **Commission:** If during the term of this Agreement you sell or exchange this Property by entering into a contract that you, we, or any other party obtains from a ready, willing, and able purchaser for the sale or exchange of the Property, you shall pay BHHS Chicago a commission of $495 and ~~6%~~ of the purchase price. The commission is due on or before the closing date set forth in the purchase agreement or at the time possession is given in the event of an installment sale. We are also entitled to the commission if a purchaser, to whom the Property was offered during the term of this Agreement, directly or indirectly within one (1) year after termination of this Agreement, enters into a contract to purchase the Property and the sale subsequently closes. However, if after termination of this Agreement, you enter into an exclusive listing agreement with another real estate broker, no commission will be due to BHHS Chicago. No commission is due if the sale is not closed due to purchaser's default. Any change in the amount or the time of commission payment shall not be binding unless made in writing and signed by you and the Branch Manager.

2. **Price:** We will use our best efforts to achieve a sales price of $ 15,000   or any other amount that you agree to accept.

3. **Seller's Designated Agent:** Pursuant to Illinois law, BHHS Chicago hereby designates Adam Wolverton as your exclusive agent under this Agreement (your "Designated Agent"). You understand and agree that your Designated Agent may represent other clients at the same time as he/she represents you. If your Designated Agent is unavailable to work with you, we will arrange for another agent to represent you.

4. **Our Services:** In marketing your Property, we will display information on various internet websites available to consumers and other licensees, unless you give us written direction to exclude your Property from such websites. You authorize us to show the Property to prospective purchasers at convenient times, display signs, advertise the Property, furnish information on the Property to participants of the local multiple listing service, place a lockbox on the Property if applicable, cooperate with other brokers, and compensate them in an amount no greater than 50% of the percentage or monthly rental commission. Your Designated Agent will accept delivery of and present to you all offers and counteroffers to buy or lease your Property, assist you in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to offers and counteroffers until a sales contract or lease is signed and all contingencies are satisfied or waived, and answer your questions relating to the offers, counteroffers, notices, and contingencies, unless answering the questions is precluded by law. Our duty is to market the Property; we are not responsible for its management, maintenance, upkeep, repair, inspection, custody, care or control. We assume no liability for any personal property on or in the Property, or for the failure of any systems, nor for any personal injuries sustained on the Property.

5. **Rental:** If you rent the Property by entering into a lease that you, we, or any other party obtains from a ready, willing, and able tenant during the term of this Agreement, or if within six (6) months after termination of this Agreement you enter into a lease with anyone to whom it was offered during the term of this Agreement, you agree to pay BHHS Chicago, upon execution of the Lease by Tenant or at the time of possession, whichever is first in time, a flat dollar commission of $100 and:
   - One and one quarter (1¼) month's rent for the first year and
   - One-half (1/2) of one (1) month's rent for each year thereafter.

   If the term of the lease is extended, or if the tenant occupies additional space, whether provided for by the lease or subsequent modifications of the lease, you agree to pay BHHS Chicago additional commission of one half (1/2) of one (1) month's rent for each year thereafter. This additional commission is due upon execution of the extension, agreement for additional space, and/or execution of a new lease between you and the tenant. If after termination of this Agreement, you enter into an exclusive lease agreement with another real estate broker, no commission is due under this Agreement. If the tenant subsequently purchases the property during the lease, any extension to the lease, or within one year after the expiration of the lease or extension, you hereby agree to pay a commission as set forth in Paragraph 1 above.

6. **Termination and Cancellation:** This Agreement terminates one (1) year from date entered below or one (1) year from the date the Property was marketed to the public, whichever is later in time (the "Term"), and until then is irrevocable and binding. If we agree to cancel this Agreement at any time before the end of the Term, you agree to reimburse us for all actual marketing costs, as accounted for in writing, plus a cancellation fee of $500, payable before cancellation is effective.

7. **Compliance with Fair Housing Laws:** You acknowledge that it is illegal for either you or us to refuse to display or sell to any person because of race, color, religion, national origin, age, sex, ancestry, disability, marital or familial status, source of income, military status or unfavorable discharge from military, sexual orientation, gender identity or Order of Protection status, and agree to follow all local, state and federal fair housing laws.

8. **Special Assessments/Special Service Areas:** There are no special assessments relative to this property except _____, and property is ☐ is not ☒ in a Special Service Area. Seller agrees to notify BHHS Chicago upon receipt of any notice of special assessment and/or any notice that the real estate is in a designated Special Service Area.

9. **Indemnity/Dispute Resolution:** You agree to indemnify and hold us harmless from all claims, disputes, litigation, judgments, and costs (including reasonable attorney's fees) arising from any incorrect information or misrepresentations supplied by you or from any material facts, including latent defects, that are known to you that you fail to disclose. We agree to work together to try to resolve any controversy or claim between us regarding to this Agreement, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement). We also agree that if we cannot resolve differences we will submit all controversies relating to this Agreement to binding arbitration through the facilities of the American Arbitration Association or JAMS in Chicago, Illinois, with costs to be shared equally. This agreement to arbitrate will construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq. While either party shall have all the rights and benefits of arbitration, <u>both parties are</u> <u>giving up the right to litigate such claims and disputes in a court or jury trial.</u>

The results, determinations, findings, judgments and/or awards reached through such arbitration shall be final and binding on us both and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction. Neither of us shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity. For controversies and claims that do not exceed the applicable jurisdictional limit of small claims court, either party may bring such claims in small claims court in lieu of arbitration. Additional information and resources regarding the use of arbitration may be found at www.adr.org.

10. Copyright: You agree that we own all copyrights, patents, trade secrets and other intellectual property rights in anything created or developed in conjunction with the marketing of this Property. You specifically authorize us to use for any purposes any and all information obtained by or provided to us pursuant to this Agreement, including contained in this Agreement, and any publicly available information concerning the price and terms of the sale of the Property, length of time the Property is on the market, and any other information relating to the Property, before and after the sale or, in the event there is not a sale, after this Agreement has terminated.

11. Relocation: Would you like to receive information about your destination city?   Yes ☐   No ☑

12. Home Warranty Plan: Would you like information about a home warranty plan? Yes ☐   No ☑

13. Title Insurance: The choice of a title insurance provider is yours. Fort Dearborn Title is a title insurance provider affiliated with BHHS Chicago (as disclosed in the previously-provided Affiliated Business Arrangement Disclosure) and is available to provide title insurance in your transaction. If you have chosen a provider, please note your intent below. By selecting an option below you are simply indicating your intent and are not committing to make a purchase of title insurance. For title insurance on my transaction I intend to use:   ☐ Fort Dearborn Title   ☑ Other   ☐ Undecided

14. Disclosures: You acknowledge that attached to this Agreement and made a part of it are the following disclosures which you agree to sign:
    - Dual Agency Disclosure
    - Affiliated Business Arrangement Disclosure
    - Residential Real Property Act Disclosure
    - Lead-Based Paint Disclosure: *if your house was built before 1978*
    - Radon Disclosure
    - Anti-Fraud Disclosure

15. Real Estate Taxes:  $ _____  Tax Year: _____  Parking Space Taxes $ 250.97  Tax Year 2021

16. PIN # _____  Parking Space PIN# 17162060331237
    Homeowner's Exemption:  Yes ☐   No ☑   Senior Citizen's Homestead Exemption: Yes ☐   No ☑
    Senior Freeze Exemption:  Yes ☐   No ☑

17. Monthly Condominium Assessment: (If applicable) $_____ Seller agrees to advise BHHS Chicago of any notice of change in the Assessment within three (3) business days of receipt of such notice.

18. Marketing Notice. BHHS Chicago and its affiliated HomeServices of America family of companies are providing this Notice. BHHS Chicago has title insurance, mortgage, personal lines insurance and home warranty affiliates that are committed to the highest quality of service. To enable you to receive information from these excellent companies, BHHS Chicago makes your contact information available to them. Rest assured we do not share your financial information with anyone. If you choose, however, you may limit these companies' marketing their products or services to you unless and until you tell us to change your choice. To limit marketing offers, contact us at  DoNotContact@BHHSChicago.com.

19. Recordings. You understand that your recording or transmitting of any audio via your recording devices in your Property may result in violation of Illinois and/or federal wiretapping laws. You hereby release, hold harmless, and indemnify Broker, Designated Agent, and Broker's agents and employees from any liability which may result from your recording or transmitting in the Property. Further, you understand that while potential buyers should not photograph or videotape in the Property without your prior written permission, such recordings or transmissions may occur. You agree to remove all personal items you do not wish to have recorded or transmitted. You hereby release, hold harmless, and indemnify Broker, Designated Agent, and Broker's agents and employees from any liability with may result from potential buyers' recordings or transmissions of the Property.

Accepted and Agreed as of this _____ day of _____, 20_____.

| | |
|---|---|
| Aja Carr Favors, not individually but as Chapter 7 Trustee | Yvonne Mortimer |
| Print Seller(s) Name(s) | Print Branch Manager's Name |
| | |
| Seller's Signature | Branch Manager's Signature |
| | Adam Wolverton |
| Seller's Signature | Print Designated Agent Name |
| reed@hzhlaw.com | 312.888.9541 | 53 W Jackson Blvd, Suite 1301 |
| Email | Phone Number | Seller's Street Address & Town |
| 8 W Monroe St #P-81 Chicago, IL 60603 | | |
| "Property" Address & Town | | |

# BERKSHIRE HATHAWAY | Chicago
## HomeServices

**Dual Agency Disclosure**

Your Designated Agent, Adam Wolverton
*(Print Agent Name)*

and any subsequent designated agent, may undertake a dual representation (represent both the seller or landlord and the buyer or tenant) for the sale or lease of property. The undersigned acknowledge they were informed of the possibility of this type of representation. Before signing this document, please read the following:

Representing more than one party to a transaction presents a conflict of interest since both clients may rely upon Licensee's advice and the clients' respective interests may be adverse to each other. Licensee will undertake this representation only with the written consent of ALL clients in the transaction. Any agreement between the clients as to a final contract price and other terms is a result of negotiations between the clients acting in their own best interests and on their own behalf. You acknowledge that Licensee has explained the implications of dual representation, including the risks involved, and understand that you have been advised to seek independent advice from your advisors or attorneys before signing any documents in this transaction.

WHAT A LICENSEE CAN DO FOR CLIENTS WHEN ACTING AS A DUAL AGENT

1. Treat all clients honestly
2. Provide information about the property to the buyer or tenant
3. Disclose all latent material defects in the property that are known to Licensee
4. Disclose financial qualification of the buyer or tenant to the seller or landlord
5. Explain real estate terms
6. Help the buyer or tenant to arrange for property inspections
7. Explain closing costs and procedures
8. Help the buyer compare financing alternatives
9. Provide information about comparable properties that have sold so both clients may make educated decisions on what price to accept or offer

WHAT A LICENSEE CANNOT DISCLOSE TO CLIENTS WHEN ACTING AS A DUAL AGENT

1. Confidential information that Licensee may know about the clients, without that client's permission. No other licensee will be able to reveal the other party's confidential information to you.
2. The price or terms the seller or landlord will take, other than the listing price, without permission of the seller or landlord. No other licensee will be able to reveal this information to you.
3. The price or terms the buyer or tenant is willing to pay without permission of the buyer or tenant. No other licensee will be able to reveal this information to you.
4. A recommended or suggested price or terms the buyer or tenant should offer
5. A recommended or suggested price or terms the seller or landlord should counter with or accept

[✔] I ACCEPT DUAL AGENCY: By signing below, you acknowledge that you have read and understand this form and voluntarily consent to the Licensee acting as a dual agent (that is, to represent BOTH the seller or landlord and the buyer or tenant) should that become necessary. You further acknowledge that this Disclosure was presented when you entered into the brokerage agreement.

[ ] I DECLINE DUAL AGENCY: By signing below, you acknowledge that you have read and understand this form and voluntarily decline to give your consent to the Licensee to act as a dual agent. You further acknowledge that this Disclosure was presented when you entered into the brokerage agreement.

Aja Carr Favors, not individually but as Chapter 7 Trustee
Print Name(s)

_____   _____
Signature                         Date

_____   _____
Signature                         Date

Dual Agency Disclosure/BHHS Chicago                                    01012020

# Affiliated Business Arrangement Disclosure Statement

To: Aja Carr Favors, not individually but as Ch7 Trustee      Property: 8 W Monroe St #P-81 Chicago, IL 60603

From: BHHS Chicago      Date:

This is to give you notice that HomeServices of Illinois, LLC doing business as Berkshire Hathaway HomeServices Chicago and Berkshire Hathaway HomeServices KoenigRubloff Realty Group, HomeServices Relocation, LLC, Prosperity Home Mortgage, LLC, HomeServices Insurance, Inc. ("HSI"), Fort Dearborn Land Title Company, LLC doing business as Fort Dearborn Title ("Fort Dearborn Title") and Vanderbilt Mortgage and Finance Inc. doing business as Silverton Mortgage ("Silverton Mortgage") are part of a family of companies (the "Affiliated Companies") owned by Berkshire Hathaway, Inc. ("Berkshire Hathaway"), and each may refer to you the services of another. HomeServices of Illinois, LLC, HomeServices Relocation, LLC, Prosperity Home Mortgage, LLC, HSI and Fort Dearborn Title are each wholly owned either directly or indirectly by HomeServices of America, Inc., a Berkshire Hathaway affiliate. Silverton Mortgage is a wholly-owned indirect subsidiary of Clayton Homes, a Berkshire Hathaway affiliate. Because of these relationships, the referral of a customer (including you) by any of the Affiliated Companies to another may provide the referring company, its affiliates, and/or their employees with a financial or other benefit.

In addition, while HomeServices of Illinois, LLC is not affiliated with Cinch Home Services, Inc. doing business as Cinch Home Services ("Cinch Home Services"), it does advertise them for a fixed service fee.

Set forth below is the estimated charge or range of charges for each of the services listed. You are NOT required to use any of these service providers as a condition of the sale of the subject property or to obtain access to any settlement service.

**THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.**

| Service Provider | Service Provided | Charge or Range of Charges |
|---|---|---|
| Berkshire Hathaway HomeServices Chicago / KoenigRubloff Realty Group | Broker's Commission | $495 plus a percentage of the sales price, ranging from 6% to 10% |
| HomeServices Relocation, LLC | Relocation Services | Fees paid by employer or real estate broker |
| Prosperity Home Mortgage, LLC | Loan Origination Fee | $0 - $1,199 (2% of loan amount on some bond products) |
| | Appraisal | $425 - $1,102 |
| | Third Party Fees | $33 - $215 (credit report, tax service fee, flood cert fee) |
| Fort Dearborn Title (IL) | Lender's Policy | $500 for each mortgage plus $125 for protection between issuance of the title commitment and closing. Endorsements are $175 each; chain of title is $250; Predatory Lending Certification (if required) is $50. |
| | Owner's Policy | $1,740 for policies $200K and under, plus $20 for each additional $10K or less of coverage up to $500K. $2,360 for policies $500,001 to $510K, plus $20 for each additional $10K or less of coverage up to $1M. For policies over $1M, $3,325 plus $20 for each additional $10K of coverage over $1M. A $125 commitment update fee is charged on all owner's policies. |
| | Closing Fee | $1,380 to $1,680 for purchase price up to $500K. Add $50 per each additional $50K, or part thereof, in purchase price over $500K; plus expenses incurred and $40 for each wire, $25 for each overnight package sent, and $40 for each loan package received. $225 will be added to the closing fee for each additional mortgage. |
| HomeServices Insurance, Inc.* | Homeowner's Insurance | $200 - $2,000 annual premium, depending on product and associated risk assessments (e.g., age of home, credit score, past claims of the insured, etc.) |
| Silverton Mortgage | Loan Origination Fee | 0 – 2.75% of the loan amount (includes third party fees) |
| | Appraisal | $475 - $900 |
| Cinch Home Services | Home Warranty | $359 - $2,000, depending on property and coverage options |

ACKNOWLEDGEMENT: I/we have read this disclosure form and understand that the Affiliated Companies may refer me/us to purchase the above-described settlement service(s) from one another and that any such referrals may provide the referring company, its affiliates, and/or their employees with a financial or other benefit.

_____       _____
Signature                    (Date)           Signature                    (Date)

* In rare cases, your insurance policy may instead be issued by Long & Foster Insurance Agency, Inc., an affiliate of HSI, or under another of its trade names. HSI's trade names include: Edina Realty Insurance Agency, Home Team Insurance, HomeServices Insurance Agency, InsuranceSouth, Long Insurance Group, PCG Agencies, PCG Insurance Agency, ReeceNichols Insurance and Trident Insurance Agency.

**BERKSHIRE HATHAWAY | Chicago**
HomeServices

**ANTI-FRAUD DISCLOSURE TO CONSUMERS**

# WIRE FRAUD WARNING TO CONSUMERS

We provide you with this disclosure to alert you to a serious nationwide threat of fraud in real estate transactions.

EMAILS ATTEMPTING TO INDUCE FRAUDULENT WIRE TRANSFERS OF YOUR FUNDS ARE COMMON AND MAY APPEAR TO COME FROM A TRUSTED SOURCE. Such requests, even if they seem legitimate, may be part of a scheme to defraud you.

Electronic communications, such as email, text messages and social media messaging, are neither secure nor confidential. While Berkshire Hathaway HomeServices Chicago ("BHHS Chicago") has adopted policies and procedures to aid in avoiding fraud, even the best security protections can still be bypassed by unauthorized parties. Therefore, by this Disclosure, BHHS Chicago is providing you with information on what to do if you receive instructions to transfer funds.

NEVER TRANSFER FUNDS BASED ON EMAILED WIRE INSTRUCTIONS <u>WITHOUT</u> <u>VERIFYING THE INSTRUCTIONS BY PHONE</u> AS SPECIFIED BELOW.

If you receive any electronic communication providing wire instructions for the transfer of funds, EVEN IF THE COMMUNICATION APPEARS TO BE FROM BHHS Chicago OR YOUR REAL ESTATE AGENT, do not respond unless you have verified the information as follows:

- To verify instructions related to wiring earnest money, call the BHHS Chicago Accounting Department at 847- 853-4030.

- To verify instructions related to wiring closing funds to Fort Dearborn Title, call the Fort Dearborn Title at 847-853-6050.

- To verify instructions related to wiring closing funds to any other title company, call that company using a phone number you look up yourself, not a phone number in the email.

ACKNOWLEDGMENT:

I/we have read this Anti-Fraud Disclosure Statement and understand that if I receive any electronic communication appearing to come from BHHS Chicago or my real estate agent with instructions to transfer funds, I will verify the validity of the information before following the instructions.

Acknowledged as of this _____ day of _____, 20_____

Aja Carr Favors, not individually but as Ch 7 Trustee
Print Name                                                        Print Name

_____                          _____
Signature                                                              Signature

Wire Fraud Disclosure / BHHS Chicago                                                                                01012020

**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.: 23-01210 |
| DAWN JOI, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | Hon. A. Benjamin Goldgar |
| ) | |

## DECLARATION OF ADAM WOLVERTON
## AND BERKSHIRE HATHAWAY HOMESERVICES

Adam Wolverton, state the following as my Declaration in support of the Trustee's Motion to Employ Real Estate Broker ("Trustee's Motion"):

1. I am a realtor associate licensed by the State of Illinois, and I am associated with the real estate brokerage firm of Berkshire Hathaway Home Services (the "Firm"), which maintains offices at 550 Pennsylvania Avenue, Glen Ellyn, IL 60137.

2. I am authorized to make this declaration on behalf of the Firm. I am not a creditor of the estate in the above-captioned bankruptcy case, and I represent and hold no interests that are adverse to the estate.

3. To the best of my knowledge and belief, neither I nor any employee of Firm, has any connection with the (i) above-named debtor, (ii) the Debtor's creditors, (iii) the U.S. Trustee, (iv) any person employed by the U.S. Trustee, or (v) any other party in interest, their respective attorneys and accountants, except that I have been retained by the Trustee's counsel in other bankruptcy cases to sell real estate.

4. Neither I nor any employee of Firm hold or represent any interest adverse to that of the Trustee, the estate, or the U.S. Trustee.

5. Based on the foregoing, I believe I and the employees of the Firm are disinterested persons within the meaning of §101(14) of the Bankruptcy Code.

6. I have advised the Trustee of my firm's willingness to serve as his real estate broker with respect to the real estate based on the terms set forth in the Listing Agreement attached to the Trustee's Motion, with payment of compensation to be subject to allowance by this Court.

7. I will seasonably amend this declaration to the extent that I become aware of relationships for which disclosure is appropriate.

As provided by 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 6/5/23

ADAM WOLVERTON
Berkshire Hathaway Home Services