DigiSign Verified: ...

# EXHIBIT A

## MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0

1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties."

2  Buyer Name(s) *[PLEASE PRINT]* **Kennedy Harris**

3  Seller Name(s) *[PLEASE PRINT]* _____

4  **If Dual Agency applies, check here ☐ and complete Optional Paragraph 29.**

5  **2. THE REAL ESTATE:** Real Estate is defined as the property, all improvements, the fixtures and Personal Property
6  included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with
7  approximate lot size or acreage of _____ commonly known as:

8  **3817 S ELLIS Ave      302                    Chicago          IL        60653    Cook**

9  Address                          Unit # (If applicable)              City            State      Zip        County

10  Permanent Index Number(s): **17351011254006**_____ ☐ Single Family Attached ☐ Single Family Detached ☐ Multi-Unit

11  **If Designated Parking is Included:** # of space(s) _____; identified as space(s) # _____; location _____

12  *[CHECK TYPE]* ☐ deeded space, PIN: _____ ☐ limited common element ☐ assigned space.

13  **If Designated Storage is Included:** # of space(s) _____; identified as space(s) # _____; location _____

14  *[CHECK TYPE]* ☐ deeded space, PIN: _____ ☐ limited common element ☐ assigned space.

15  **3. FIXTURES AND PERSONAL PROPERTY AT NO ADDED VALUE:** All of the fixtures and included Personal Property
16  are owned by Seller and to Seller's knowledge are in operating condition on Date of Acceptance, unless otherwise
17  stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing, and well systems
18  together with the following items at no added value by Bill of Sale at Closing *[CHECK OR ENUMERATE APPLICABLE ITEMS]*:

| | | | |
|---|---|---|---|
| 19 ☒ Refrigerator | __ Wine/Beverage Refrigerator | ☒ Light Fixtures, as they exist | __ Fireplace Gas Log(s) |
| 20 ☒ Oven/Range/Stove | __ Sump Pump(s) | __ Built-in or attached shelving | __ Smoke Detectors |
| 21 ☒ Microwave | __ Water Softener (unless rented) | __ All Window Treatments & Hardware | __ Carbon Monoxide Detectors |
| 22 __ Dishwasher | ☒ Central Air Conditioning | __ Satellite Dish | __ Invisible Fence System, Collar & Box |
| 23 __ Garbage Disposal | __ Central Humidifier | __ Wall Mounted Brackets (AV/TV) | __ Garage Door Opener(s) |
| 24 __ Trash Compactor | __ Central Vac & Equipment | __ Security System(s) (unless rented) | with all Transmitters |
| 25 __ Washer | __ All Tacked Down Carpeting | __ Intercom System | __ Outdoor Shed |
| 26 ☒ Dryer | __ Existing Storms & Screens | __ Electronic or Media Air Filter(s) | __ Outdoor Playset(s) |
| 27 ☒ Attached Gas Grill | __ Window Air Conditioner(s) | __ Backup Generator System | __ Planted Vegetation |
| 28 __ Water Heater | __ Ceiling Fan(s) | __ Fireplace Screens/Doors/Grates | __ Hardscape |

29  **Other Items Included at No Added Value:** _____

30  **Items Not Included:** _____

31  Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
32  operating condition at Possession except: _____

33  A system or item shall be deemed to be in operating condition if it performs the function for which it is intended,
34  regardless of age, and does not constitute a threat to health or safety.

35  **If Home Warranty applies, check here ☐ and complete Optional Paragraph 32.**

36  **4. PURCHASE PRICE AND PAYMENT:** The Purchase Price is $ **200000**_____. After the payment of Earnest
37  Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing in
38  "Good Funds" as defined by law.

39  a)  **CREDIT AT CLOSING:** *[IF APPLICABLE]* Provided Buyer's lender permits such credit to show on the final
40  settlement statement or lender's closing disclosure, **and if not, such lesser amount as the lender permits,** Seller
41  agrees to credit $ _____ to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

42  b)  **EARNEST MONEY:** Earnest Money of $ **4000**_____ shall be tendered to Escrowee on or before **2**__
43  Business Days after Date of Acceptance. Additional Earnest Money, if any, of $ _____ shall be tendered
44  by _____, 20 ___. Earnest Money shall be held in trust for the mutual benefit of the Parties by

Buyer Initial _**KH**_   Buyer Initial _____    Seller Initial _____ Seller Initial _____
Address: **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653** _____ v7.0
Page 1 of 13

45  *[CHECK ONE]*: ☑ Seller's Brokerage; ❑ Buyer's Brokerage; ❑ As otherwise agreed by the Parties, as "Escrowee."

46  **In the event the Contract is declared null and void or is terminated, Earnest Money shall be disbursed pursuant to Paragraph 26.**

47  c) **BALANCE DUE AT CLOSING:** The Balance Due at Closing shall be the Purchase Price, plus or minus

48  prorations, less Earnest Money paid, less any credits at Closing, and shall be payable in Good Funds at Closing.

49  **5. CLOSING:** Closing shall be on __August 11__, 20 __23__ or at such time as mutually agreed by the Parties in

50  writing. Closing shall take place at the escrow office of the title insurance company, its underwriter, or its issuing

51  agent that will issue the Owner's Policy of Title Insurance, whichever is situated nearest the Real Estate.

52  **6. POSSESSION:** Unless otherwise provided in Optional Paragraph 35, Seller shall deliver possession to Buyer at

53  Closing. Possession shall be deemed to have been delivered when Seller and all occupants (if any) have vacated

54  the Real Estate and delivered keys to the Real Estate to Buyer or to the office of the Seller's Brokerage.

55  **7. FINANCING:** *[INITIAL ONLY ONE OF THE FOLLOWING SUBPARAGRAPHS a, b, or c]*

56  *KH* ___ ___ ___ a) **LOAN CONTINGENCY:** Not later than **forty-five (45) days after Date of Acceptance or five**

57  **(5) Business Days prior to the date of Closing**, whichever is earlier, ("Loan Contingency Date") Buyer shall

58  provide written evidence from Buyer's licensed lending institution confirming that Buyer has received loan

59  approval subject only to "at close" conditions, matters of title, survey, and matters within Buyer's control for a loan

60  as follows: *[CHECK ONE]* ☑ fixed; ❑ adjustable; *[CHECK ONE]* ☑ conventional; ❑ FHA; ❑ VA; ❑ USDA;

61  ❑ other _____ loan for **97** % of the Purchase Price, plus private mortgage insurance (PMI),

62  if required, with an interest rate (initial rate if an adjustable rate mortgage used) not to exceed **7.5** % per annum,

63  amortized over not less than **30** years. Buyer shall pay discount points not to exceed ____ % of the loan amount.

64  Buyer shall pay origination fee(s), closing costs charged by lender, and title company escrow closing fees.

65  If Buyer, having applied for the loan specified above, is unable to provide such loan approval and serves Notice to

66  Seller not later than the Loan Contingency Date, this Contract shall be null and void. If Buyer is unable to provide

67  such written evidence not later than the date specified herein or by any extension date agreed to by the Parties,

68  Seller shall have the option of declaring this Contract terminated by giving Notice to Buyer. If prior to the Seller

69  serving such Notice to terminate, Buyer provides written evidence of such loan approval, this Contract shall remain

70  in full force and effect.

71  Upon the expiration of ten (10) Business Days after Date of Acceptance, if Buyer has failed to make a loan

72  application and pay all fees required for such application to proceed and the appraisal to be performed, Seller shall

73  have the option to declare this Contract terminated by giving Notice to Buyer not later than five (5) Business Days

74  thereafter or any extension thereof agreed to by the Parties in writing.

75  **A Party causing delay in the loan approval process shall not have the right to terminate under this**

76  **subparagraph. In the event neither Party elects to declare this Contract terminated as specified above, or as**

77  **otherwise agreed, then this Contract shall continue in full force and effect without any loan contingencies.**

78  **Unless otherwise provided in Paragraph 30, this Contract is not contingent upon the sale and/or closing of**

79  **Buyer's existing real estate.** Buyer shall be deemed to have satisfied the financing conditions of this subparagraph

80  if Buyer obtains a loan approval in accordance with the terms of this subparagraph even though the loan is

81  conditioned on the sale and/or closing of Buyer's existing real estate.

82  If Buyer is seeking FHA, VA, or USDA financing, **required amendments and disclosures shall be attached to this**

83  **Contract.** If VA, the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP), shall be paid by Buyer.

84  ___ ___ ___ ___ b) **CASH TRANSACTION WITH NO MORTGAGE:** *[ALL CASH]* If this selection is made, Buyer will pay

85  at Closing, in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer,

86  that Buyer has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above

87  representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to

88  Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds

89 to close. Buyer understands and agrees that, so long as Seller has fully complied with Seller's obligations under this
90 Contract, any act or omission outside of the control of Seller, whether intentional or not, that prevents Buyer from
91 satisfying the Balance Due at Closing, shall constitute a material breach of this Contract by Buyer. The Parties shall
92 share the title company escrow closing fee equally. **Unless otherwise provided in Paragraph 30, this Contract shall
93 not be contingent upon the sale and/or closing of Buyer's existing real estate.**

94 _____ _____ _____ _____ c) **CASH TRANSACTION, MORTGAGE ALLOWED:** If this selection is made, Buyer will pay at closing,
95 in the form of "Good Funds," the Balance Due at Closing. Buyer represents to Seller, as of the Date of Offer, that Buyer
96 has sufficient funds available to satisfy the provisions of this subparagraph. Buyer agrees to verify the above
97 representation upon the reasonable request of Seller and to authorize the disclosure of such financial information to
98 Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the availability of sufficient funds
99 to close. Notwithstanding such representation, Seller agrees to reasonably and promptly cooperate with Buyer so that
100 Buyer may apply for and obtain a mortgage loan or loans including but not limited to providing access to the Real
101 Estate to satisfy Buyer's obligations to pay the Balance Due at Closing. Such cooperation shall include the performance
102 in a timely manner of all of Seller's pre-closing obligations under this Contract. **This Contract shall NOT be contingent
103 upon Buyer obtaining financing.** Buyer understands and agrees that, so long as Seller has fully complied with Seller's
104 obligations under this Contract, any act or omission outside of the control of Seller, whether intentional or not, that
105 prevents Buyer from satisfying the Balance Due at Closing shall constitute a material breach of this Contract by Buyer.
106 Buyer shall pay the title company escrow closing fee if Buyer obtains a mortgage; provided however, if Buyer elects
107 to close without a mortgage loan, the Parties shall share the title company escrow closing fee equally. **Unless otherwise
108 provided in Paragraph 30, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing
109 real estate.**

110 **8. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
111 *[CHECK ONE]* ☑ has ☐ has not received a completed Illinois Residential Real Property Disclosure;
112 *[CHECK ONE]* ☑ has ☐ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home;"
113 *[CHECK ONE]* ☑ has ☐ has not received a Lead-Based Paint Disclosure;
114 *[CHECK ONE]* ☑ has ☐ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions;"
115 *[CHECK ONE]* ☑ has ☐ has not received the Disclosure of Information on Radon Hazards.

116 **9. PRORATIONS:** The requirements contained in this paragraph shall survive the Closing. Proratable items shall
117 be prorated to and including the Date of Closing and shall include without limitation, general real estate taxes,
118 rents and deposits (if any) from tenants; Special Service Area or Special Assessment Area tax for the year of Closing
119 only; utilities, water and sewer, pre-purchased fuel; and Homeowner or Condominium Association fees (and
120 Master/Umbrella Association fees, if applicable). Accumulated reserves of a Homeowner/Condominium
121 Association(s) are not a proratable item.

122 a) The general real estate taxes shall be prorated to and including the date of Closing based on **105** % of
123 the most recent ascertainable full year tax bill. All general real estate tax prorations shall be final as of Closing,
124 except as provided in Paragraph 23. If the amount of the most recent ascertainable full year tax bill reflects a
125 homeowner, senior citizen, disabled veteran or other exemption, a senior freeze or senior deferral, then Seller
126 has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental
127 entity, before or after Closing, to preserve said exemption(s). **The proration shall not include exemptions to
128 which the Seller is not lawfully entitled.**

129 b) Seller represents, if applicable, that as of Date of Acceptance Homeowner/Condominium Association(s)
130 fees are $ _____ per **Monthly** (and, if applicable, Master/Umbrella Association fees are
131 $ _____ per _____). Seller agrees to pay prior to or at Closing the remaining balance of any
132 special assessments by the Association(s) confirmed prior to Date of Acceptance.

133     c) Special Assessment Area or Special Service Area installments due after the year of Closing shall not be
134     proratable items and shall be paid by Buyer, unless otherwise provided by ordinance or statute.

135 **10. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective
136 Parties, by Notice, may:

137     a) Approve this Contract; or

138     b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or

139     c) Propose modifications to this Contract, except for the Purchase Price, which proposal shall be conclusively
140     deemed a counteroffer notwithstanding any language contained in any such proposal purporting to state the
141     proposal is not a counteroffer. If after expiration of ten (10) Business Days after Date of Acceptance written
142     agreement has not been reached by the Parties with respect to resolution of all proposed modifications, either
143     Party may terminate this Contract by serving Notice, whereupon this Contract shall be immediately deemed
144     terminated; or

145     d) Offer proposals specifically referring to this subparagraph d) which shall not be considered a counteroffer.
146     Any proposal not specifically referencing this subparagraph d) shall be deemed made pursuant to
147     subparagraph c) as a modification. If proposals made with specific reference to this subparagraph d) are not
148     agreed upon, **neither** Buyer nor Seller may declare this contract null and void, and this contract shall remain
149     in full force and effect.

150 **If Notice of disapproval or proposed modifications is not served within the time specified herein, the**
151 **provisions of this paragraph shall be deemed waived by the Parties and this Contract shall remain in full force**
152 **and effect. If Notice of termination is given, said termination shall be absolute and the Contract rendered null**
153 **and void upon the giving of Notice, notwithstanding any language proffered by any Party purporting to permit**
154 **unilateral reinstatement by withdrawal of any proposal(s).**

155 **11. WAIVER OF PROFESSIONAL INSPECTIONS:** *[INITIAL IF APPLICABLE]* \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ Buyer acknowledges
156 the right to conduct inspections of the Real Estate and hereby waives the right to conduct any such inspections of
157 the Real Estate, and further agrees that the provisions of Paragraph 12 shall not apply.

158 **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** *[NOT APPLICABLE IF PARAGRAPH 11 IS INITIALED]*
159 Buyer may conduct at Buyer's expense (unless payment for such expense is otherwise required by governmental
160 regulation) any or all of the following inspections of the Real Estate by one or more licensed or certified inspection
161 services: home, radon, environmental, lead-based paint, lead-based paint hazards or wood-destroying insect
162 infestation, or any other inspections desired by Buyer in the exercise of reasonable due diligence. Seller agrees to
163 make all areas of the Real Estate accessible for inspection(s) upon reasonable notice and to have all utilities turned
164 on during the time of such inspections. Buyer shall indemnify Seller and hold Seller harmless from and against
165 any loss or damage caused by any acts of Buyer or any person performing any inspection on behalf of Buyer.

166     a) The request for repairs shall cover only the major components of the Real Estate, limited to central heating
167     and cooling system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings,
168     floors, appliances and foundation. A major component shall be deemed to be in operating condition, and
169     therefore not defective within the meaning of this paragraph, if it does not constitute a current threat to health
170     or safety, and performs the function for which it is intended, regardless of age or if it is near or at the end of its
171     useful life. Minor repairs, routine maintenance items and painting, decorating or other items of a cosmetic
172     nature, no matter the cost to remedy same, do not constitute defects, are not a part of this contingency and shall
173     not be a basis for the Buyer to cancel this Contract. **A request by Buyer for credits or repairs in violation of**
174     **the terms of this subparagraph shall allow Seller to declare this Contract terminated and direct the return**
175     **of Buyer's Earnest Money**. If radon mitigation is performed, Seller shall pay for any retest.

*Buyer Initial* **KH**    *Buyer Initial* _____        *Seller Initial* _____    *Seller Initial* _____
*Address:* **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653** _____ *v7.0*
*Page 4 of 13*

176 b) Buyer shall serve Notice upon Seller or Seller's attorney of any major component defects disclosed by any
177 inspection for which Buyer requests resolution by Seller within five (5) Business Days (ten (10) calendar days
178 for a lead-based paint or lead-based paint hazard inspection) after Date of Acceptance. **Buyer shall not send**
179 **any portion of the inspection report with the Notice provided under this subparagraph unless such**
180 **inspection report, or any part thereof, is specifically requested in writing by Seller or Seller's attorney.** If
181 after expiration of ten (10) Business Days after Date of Acceptance written agreement has not been reached by
182 the Parties with respect to resolution of all inspection issues, either Party may terminate this Contract by
183 serving Notice to the other Party, whereupon this Contract shall be immediately deemed terminated.

184 c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
185 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller within
186 five (5) Business Days after Date of Acceptance, this Contract shall be null and void. Said Notice shall not
187 include any portion of the inspection reports unless requested by Seller.

188 d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a**
189 **waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain**
190 **in full force and effect.**

191 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
192 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
193 Days after Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice with proof**
194 **of same to Seller within the time specified, this Contract shall be null and void. If Notice is not served within**
195 **the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in**
196 **full force and effect.**

197 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
198 located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to**
199 **Seller within ten (10) Business Days after Date of Acceptance or by the Loan Contingency Date, whichever is**
200 **later, Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
201 Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

202 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** *[IF APPLICABLE]* The Parties agree that the terms
203 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting
204 terms, and shall apply to property subject to the Illinois Condominium Property Act and the Common Interest
205 Community Association Act or other applicable state association law ("Governing Law").

206 a) Title when conveyed shall be good and merchantable, subject to terms and provisions of the Declaration of
207 Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all amendments; public and
208 utility easements including any easements established by or implied from the Declaration/CCRs or
209 amendments thereto; party wall rights and agreements; limitations and conditions imposed by the Governing
210 Law; installments due after the date of Closing of general assessments established pursuant to the Declaration/CCRs.

211 b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for
212 all special assessments confirmed prior to Date of Acceptance.

213 c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
214 Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement relative to
215 payment thereof. Absent such agreement either Party may declare the Contract null and void.

216 d) Seller shall, within ten (10) Business Days from Date of Acceptance, apply for those items of disclosure
217 upon sale as described in the Governing Law, and provide same in a timely manner, but no later than the time
218 period provided for by law. This Contract is subject to the condition that Seller be able to procure and provide
219 to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to purchase created by the

Buyer Initial *KH*   Buyer Initial _____   Seller Initial _____   Seller Initial _____
Address: **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653** _____ v7.0
Page 5 of 13

220 Declaration/CCRs. In the event the Condominium Association requires the personal appearance of Buyer or
221 additional documentation, Buyer agrees to comply with same.

222 e) In the event the documents and information provided by Seller to Buyer disclose that the existing
223 improvements are in violation of existing rules, regulations or other restrictions or that the terms and
224 conditions contained within the documents would unreasonably restrict Buyer's use of the Real Estate or
225 would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
226 Buyer may declare this Contract null and void by giving Notice to Seller within five (5) Business Days after the
227 receipt of the documents and information required by this paragraph, listing those deficiencies which are
228 unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have waived
229 this contingency, and this Contract shall remain in full force and effect.

230 f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

231 **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
232 merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
233 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
234 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to:
235 covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not
236 interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and payable
237 at the time of Closing.

238 **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
239 a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
240 closing inspection or disclosure requirement, municipal Transfer Tax or other similar ordinances. Cost of
241 transfer taxes, inspection fees, and any repairs required by an inspection pursuant to municipal ordinance shall
242 be paid by the Party designated in such ordinance unless otherwise agreed to by the Parties.

243 b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
244 Revenue Code, the Foreign Investment in Real Property Tax Act (FIRPTA), and the Real Estate Settlement
245 Procedures Act of 1974, as amended.

246 **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
247 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
248 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a
249 title company licensed to operate in the State of Illinois, issued on or subsequent to Date of Acceptance, subject
250 only to items listed in Paragraph 16 and shall cause a title policy to be issued with an effective date as of Closing.
251 The requirement to provide extended coverage shall not apply if the Real Estate is vacant land. The commitment
252 for title insurance furnished by Seller will be presumptive evidence of good and merchantable title as therein
253 shown, subject only to the exceptions therein stated. **If the title commitment discloses any unpermitted**
254 **exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to**
255 **Buyer, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title**
256 **insurer commit to either insure against loss or damage that may result from such exceptions or survey matters**
257 **or insure against any court-ordered removal of the encroachments.** If Seller fails to have such exceptions waived
258 or insured over prior to Closing, Buyer may elect to take title as it then is with the right to deduct from the Purchase
259 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish to Buyer at Closing an Affidavit
260 of Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
261 Insurance Policy.

262 **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
263 condominium, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms

Buyer Initial _KH_    Buyer Initial _____      Seller Initial _____    Seller Initial _____
Address: **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653**      v7.0

264 to the current Minimum Standard of Practice for boundary surveys, is dated not more than six (6) months prior to
265 the date of Closing, and is prepared by a professional land surveyor licensed to practice land surveying under the
266 laws of the State of Illinois. The Plat of Survey shall show visible evidence of improvements, rights of way,
267 easements, use and measurements of all parcel lines. The land surveyor shall set monuments or witness corners at
268 all accessible corners of the land. **All such corners shall also be visibly staked or flagged**. The Plat of Survey shall
269 include the following statement placed near the professional land surveyor's seal and signature: "This professional
270 service conforms to the current Illinois Minimum Standards for a boundary survey." A Mortgage Inspection, as
271 defined, is not a boundary survey and is not acceptable.

272 **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the Real
273 Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
274 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
275 Earnest Money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
276 condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
277 Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace
278 damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall
279 be applicable to this Contract, except as modified by this paragraph.

280 **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean condition.
281 All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at
282 Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate, fixtures and
283 included Personal Property prior to Possession to verify that the Real Estate, improvements and included Personal
284 Property are in substantially the same condition as of Date of Acceptance, normal wear and tear excepted.

285 **22. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing.
286 Seller represents that with respect to the Real Estate, Seller has no knowledge of, nor has Seller received any written
287 notice from any association or governmental entity regarding:

288     a)   zoning, building, fire or health code violations that have not been corrected;
289     b)   any pending rezoning;
290     c)   boundary line disputes;
291     d)   any pending condemnation or Eminent Domain proceeding;
292     e)   easements or claims of easements not shown on the public records;
293     f)   any hazardous waste on the Real Estate;
294     g)   real estate tax exemption(s) to which Seller is not lawfully entitled; or
295     h)   any improvements to the Real Estate for which the required initial and final permits were not obtained.

296 Seller further represents that:
297 *[INITIALS]* KH ____ ____ ____ There *[CHECK ONE]* ☐ are ☑ are not improvements to the Real Estate which are not
298 included in full in the determination of the most recent tax assessment.
299 *[INITIALS]* KH ____ ____ ____ There *[CHECK ONE]* ☐ are ☑ are not improvements to the Real Estate which are eligible
300 for the home improvement tax exemption.
301 *[INITIALS]* KH ____ ____ ____ There *[CHECK ONE]* ☐ is ☑ is not an unconfirmed pending special assessment affecting
302 the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
303 *[INITIALS]* KH ____ ____ ____ The Real Estate *[CHECK ONE]* ☐ is ☑ is not located within a Special Assessment Area or
304 Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
305 All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
306 matters that require modification of the representations previously made in this Paragraph 22, Seller shall

307 promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
308 terminate this Contract by Notice to Seller and this Contract shall be null and void.

309 **23. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
310 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
311 escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
312 Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes shall
313 be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after proration
314 shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's obligation
315 after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly upon
316 demand.

317 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal holidays.
318 Business Hours are defined as 8 a.m. to 6 p.m. Chicago time. In the event the Closing or Loan Contingency Date
319 described in this Contract does not fall on a Business Day, such date shall be the next Business Day.

320 **25. ELECTRONIC OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
321 executing, negotiating, finalizing, and amending this Contract, and delivery thereof by one of the following
322 methods shall be deemed delivery of this Contract containing original signature(s). An acceptable facsimile
323 signature may be produced by scanning an original, hand-signed document and transmitting same by electronic
324 means. An acceptable digital signature may be produced by use of a qualified, established electronic security
325 procedure mutually agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an
326 established, mutually acceptable electronic method, such as creating a PDF ("Portable Document Format")
327 document incorporating the digital signature and sending same by electronic mail.

328 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
329 Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
330 refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
331 competent jurisdiction."
332 In the event either Party has declared the Contract null and void or the transaction has failed to close as provided
333 for in this Contract and if Escrowee has not received joint written direction by the Parties or such court order, the
334 Escrowee may elect to proceed as follows:

335    a) Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
336    prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee intends
337    to disburse in the absence of any written objection. If no written objection is received by the date indicated in
338    the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice to the Parties.
339    **If any Party objects in writing** to the intended disbursement of Earnest Money then Earnest Money shall be
340    held until receipt of joint written direction from all Parties or until receipt of an order of a court of competent jurisdiction.
341    b) Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
342    resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds deposited
343    with the Court the amount necessary to reimburse Escrowee for court costs and reasonable attorney's fees
344    incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to reimburse Escrowee
345    for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify Escrowee for additional
346    costs and fees incurred in filing the Interpleader action.

347 **27. NOTICE:** Except as provided in Paragraph 30 c) 2) regarding the manner of service for "kick-out" Notices, all
348 Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
349 any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:

350    a) By personal delivery; or

*Buyer Initial* KH     *Buyer Initial* _____        *Seller Initial* _____    *Seller Initial* _____
*Address:* **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653**          *v7.0*

351  b)  By mailing to the addresses recited herein on Page 13 by regular mail and by certified mail, return receipt
352  requested. Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or

353  c)  By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
354  Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted during
355  non-business hours, the effective date and time of Notice is the first hour of the next Business Day after transmission; or

356  d)  By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
357  attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
358  transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective date
359  and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may opt out
360  of future e-mail Notice by any form of Notice provided by this Contract; or

361  e)  By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
362  following deposit with the overnight delivery company.

363  f)  If a Party fails to provide contact information herein, as required, Notice may be served upon the Party's
364  Designated Agent in any of the manners provided above.

365  g)  The Party serving a Notice shall provide courtesy copies to the Parties' Designated Agents. Failure to provide
366  such courtesy copies shall not render Notice invalid.

367  **28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the Parties
368  are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to collect
369  reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

370  **THE FOLLOWING NUMBERED PARAGRAPHS ARE A PART OF THIS CONTRACT ONLY IF INITIALED BY THE PARTIES.**

371  *[INITIALS]* ____ ____ ____ ____  **29. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
372  consented to _____ *[LICENSEE]* acting as a Dual Agent in providing brokerage services on
373  their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in
374  this Contract.

375  ____ ____ ____ ____  **30. SALE OF BUYER'S REAL ESTATE:**

376  a)  **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:

377  1)  Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:

378  _____ .
379  Address                                        City                    State              Zip

380  2)  Buyer *[CHECK ONE]* ❏ has ❏ has not entered into a contract to sell Buyer's real estate.
381  If Buyer has entered into a contract to sell Buyer's real estate, that contract:
382  a)  *[CHECK ONE]* ❏ is ❏ is not subject to a mortgage contingency.
383  b)  *[CHECK ONE]* ❏ is ❏ is not subject to a real estate sale contingency.
384  c)  *[CHECK ONE]* ❏ is ❏ is not subject to a real estate closing contingency.

385  3)  Buyer *[CHECK ONE]* ❏ has ❏ has not publicly listed Buyer's real estate for sale with a licensed real estate broker
386  and in a local multiple listing service.

387  4)  If Buyer's real estate is not publicly listed for sale with a licensed real estate broker and in a local multiple
388  listing service, Buyer *[CHECK ONE]*:
389  a)  ❏ Shall publicly list real estate for sale with a licensed real estate broker who will place it in a local
390  multiple listing service within five (5) Business Days after Date of Acceptance.
391  *[FOR INFORMATION ONLY]* Broker: _____
392  Broker's Address: _____  Phone: _____
393  b)  ❏ Does not intend to list said real estate for sale.

*Buyer Initial* _KH_  *Buyer Initial* _____      *Seller Initial* _____  *Seller Initial* _____
*Address:* **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653** _____  v7.0

**b) CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**

1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that is in full force and effect as of _____, 20 ____. Such contract should provide for a closing date not later than the Closing Date set forth in this Contract. **If Notice is served on or before the date set forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's real estate is not served on or before the close of business on the date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force and effect.** (If this paragraph is used, then the following paragraph **must** be completed.)

2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 30 b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of Buyer's real estate on or before _____, 20 ____. **If Notice that Buyer has not closed the sale of Buyer's real estate is served before the close of business on the next Business Day after the date set forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this Paragraph 30, and this Contract shall remain in full force and effect.**

3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 30 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 30 b) 1)), Buyer shall, within three (3) Business Days of such termination, notify Seller of said termination. **Unless Buyer, as part of said Notice, waives all contingencies in Paragraph 30 and complies with Paragraph 30 d), this Contract shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served within the time specified, Buyer shall be in default under the terms of this Contract.**

**c) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency, Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:

1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in Paragraph 30 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have ____ hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 30 b), subject to Paragraph 30 d).

2) Seller's Notice to Buyer (commonly referred to as a "kick-out" Notice) shall be in writing and shall be served on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out" Notice should be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
   a) By personal delivery effective at the time and date of personal delivery; or
   b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be effective at 10 a.m. on the morning of the second day following deposit of Notice in the U.S. Mail; or
   c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4 p.m. Chicago time on the next delivery day following deposit with the overnight delivery company, whichever first occurs.

3) If Buyer complies with the provisions of Paragraph 30 d) then this Contract shall remain in full force and effect.

4) If the contingencies set forth in Paragraph 30 b) are NOT waived in writing within said time period by Buyer, this Contract shall be null and void.

5) Except as provided in Paragraph 30 c) 2) above, all Notices shall be made in the manner provided by Paragraph 27 of this Contract.

6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or representative.

*Buyer Initial* KH _____ *Buyer Initial* _____    *Seller Initial* _____ *Seller Initial* _____
*Address:* **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653** _____    *v7.0*
*Page 10 of 13*

438     d) **WAIVER OF PARAGRAPH 30 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
439 Paragraph 30 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
440 money in the amount of $ _____ in the form of a cashier's or certified check within the time specified.
441 **If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be deemed**
442 **ineffective and this Contract shall be null and void.**

443     e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations
444 contained in Paragraph 30 at any time, and Buyer agrees to cooperate in providing relevant information.

445 ____ ____ ____ ____ **31. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
446 into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
447 _____, 20 ____. **In the event the prior contract is not cancelled within the time specified, this Contract**
448 **shall be null and void. If prior contract is subject to Paragraph 30 contingencies, Seller's notice to the purchaser**
449 **under the prior contract should not be served until after Attorney Review and Professional Inspections provisions**
450 **of this Contract have expired, been satisfied or waived.**

451 ____ ____ ____ ____ **32. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost of
452 $ _____. Evidence of a fully pre-paid policy shall be delivered at Closing.

453 ____ ____ ____ ____ **33. WELL OR SANITARY SYSTEM INSPECTIONS:** Seller shall obtain at Seller's expense a well
454 water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria and
455 nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental Health
456 Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to Closing, stating
457 that the well and water supply and the private sanitary system are in operating condition with no defects noted. Seller
458 shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of
459 remedying a defect or deficiency and the cost of landscaping together exceed $3,000, and if the Parties cannot reach
460 agreement regarding payment of such additional cost, this Contract may be terminated by either Party. Additional
461 testing recommended by the report shall be obtained at the Seller's expense. If the report recommends additional
462 testing after Closing, the Parties shall have the option of establishing an escrow with a mutual cost allocation for
463 necessary repairs or replacements, or either Party may terminate this Contract prior to Closing. Seller shall deliver a
464 copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to Closing.

465 ____ ____ ____ ____ **34. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 12, within
466 ten (10) Business Days after Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written report, dated
467 not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the appropriate state
468 regulatory authority in the subcategory of termites, stating that there is no visible evidence of active infestation by
469 termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the report discloses
470 evidence of active infestation or structural damage, Buyer has the option within five (5) Business Days of receipt of the
471 report to proceed with the purchase or to declare this Contract null and void.

472 ____ ____ ____ ____ **35. POSSESSION AFTER CLOSING:** Possession shall be delivered no later than 11:59 p.m. on the
473 date that is *[CHECK ONE]* ❑ ____ days after the date of Closing or ❑ _____, 20 ___ ("the Possession Date").
474 Seller shall be responsible for all utilities, contents and liability insurance, and home maintenance expenses until
475 delivery of possession. Seller shall deposit in escrow at Closing with an escrowee as agreed, the sum of $ _____
476 (if left blank, two percent (2%) of the Purchase Price) and disbursed as follows:

477     a) The sum of $ _____ per day for use and occupancy from and including the day after Closing to
478 and including the day of delivery of Possession if on or before the Possession Date;

479     b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
480 the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

*Buyer Initial* KH *Buyer Initial* _____      *Seller Initial* _____ *Seller Initial* _____
*Address:* **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653**     v7.0
*Page 11 of 13*

481     c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have
482     been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
483     deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

484 *KH* ___ ___ ___ **36. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As Is"
485 condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect
486 to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those known
487 defects, if any, disclosed by Seller. Buyer may conduct at Buyer's expense such inspections as Buyer desires. In that
488 event, Seller shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller
489 and hold Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
490 performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is unacceptable**
491 **to Buyer and Buyer so notifies Seller within five (5) Business Days after Date of Acceptance, this Contract shall be**
492 **null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and Buyer shall not be obligated**
493 **to send the inspection report to Seller absent Seller's written request for same. Failure of Buyer to notify Seller or**
494 **to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and**
495 **this Contract shall remain in full force and effect.** Buyer acknowledges that the provisions of Paragraph 12 and the
496 warranty provisions of Paragraph 3 do not apply to this Contract. Nothing in this paragraph shall prohibit the exercise
497 of rights by Buyer in Paragraph 33, if applicable.

498 ___ ___ ___ ___ **37. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
499 Estate by _____ Buyer's Specified Party, within five (5) Business Days after Date
500 of Acceptance. In the event Buyer's Specified Party does not approve of the Real Estate and Notice is given to Seller
501 within the time specified, this Contract shall be null and void. If Notice is not served within the time specified, this
502 provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.

503 *KH* ___ ___ ___ **38. ATTACHMENTS:** The following attachments, if any, are hereby incorporated into this Contract
                                 Intent to Escalate
504 *[IDENTIFY BY TITLE]*: _____
505 _____.

506 ___ ___ ___ ___ **39. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
507 Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and with
508 such additional terms as either Party may deem necessary, providing for one or more of the following *[CHECK APPLICABLE BOXES]*:

509 ❑ Articles of Agreement for Deed     ❑ Assumption of Seller's Mortgage     ❑ Commercial/Investment
510    or Purchase Money Mortgage     ❑ Cooperative Apartment     ❑ New Construction
511 ❑ Short Sale     ❑ Tax-Deferred Exchange     ❑ Vacant Land
512 ❑ Multi-Unit (4 Units or fewer)     ❑ Interest Bearing Account     ❑ Lease Purchase

Buyer Initial *KH* ___ Buyer Initial _____     Seller Initial _____ Seller Initial _____
Address: **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653**     *v7.0*

513 THE PARTIES ACKNOWLEDGE THAT THIS CONTRACT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS AND IS SUBJECT TO THE
514 COVENANT OF GOOD FAITH AND FAIR DEALING IMPLIED IN ALL ILLINOIS CONTRACTS.

515 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.

516 THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL MULTI-
517 BOARD RESIDENTIAL REAL ESTATE CONTRACT 7.0.

518 07/15/2023
519 Date of Offer          DATE OF ACCEPTANCE *7/17/23*

520 *Kennedy Harris*
521 Buyer Signature          Seller Signature

522
523 Buyer Signature          Seller Signature

524 **Kennedy Harris**          *Reed Heiligman; Atty for Aja Carr*
525 Print Buyer(s) Name(s) *[REQUIRED]*    Print Seller(s) Name(s) *[REQUIRED]* *Favors, Ch. 7 Trustee*

526
527 Address *[REQUIRED]*          Address *[REQUIRED]*
528                                      *53 W. Jackson Blvd #1301*
529 City, State, Zip *[REQUIRED]*      City, State, Zip *[REQUIRED]*
530                                      *Chicago IL 60606*
531 Phone      E-mail          Phone      E-mail *Reed@HZHLaw.co*

532 **FOR INFORMATION ONLY**

533 **eXp Realty, LLC**   **28116**   **481011938**   Berkshire Hathaway HomeServices Chicago **25083**   **477012544**
534 Buyer's Brokerage   MLS #   State License #   Seller's Brokerage   MLS #   State License #
535 **939 W. North Avenue, # 750 Chicago**   **60642**   **550 Pennsylvania Avenue Glen Ellyn**   **60137**
536 Address      City      Zip      Address      City      Zip
537 **Elizabeth Charles**   **258347**   **475188751**   **Adam Wolverton**   **248193**   **475143628**
538 Buyer's Designated Agent   MLS #   State License #   Seller's Designated Agent   MLS #   State License #
539 **(888) 574-9405**                        **(630) 469-3662**
540 Phone      Fax      Phone      Fax
541 **sissy@noahrobinsongroup.com**      **awolverton@BHHSChicago.com**
542 E-mail      E-mail
543                                      *Zane Zienski, Esq.*
544 Buyer's Attorney      E-mail      Seller's Attorney      E-mail
545                                      *trustee@ZaneZielinski.com*
546 Address      City      State      Zip      Address      City      State      Zip
547
548 Phone      Fax      Phone *773-577-1887*      Fax
549 **Wintrust Mortgage**
550 Mortgage Company      Phone      Homeowner's/Condo Association (if any)      Phone
551 **Jake Willis**   **312-561-3772**   **Unknown**      **000-000-0000**
552 Loan Officer      Phone/Fax      Management Co./Other Contact      Phone
553 **jwillis@wintrustmortgage.com**      **Unknown**
554 Loan Officer E-mail      Management Co./Other Contact E-mail

555 Illinois Real Estate License Law requires all offers be presented in a timely manner, Buyer requests verification that this offer was presented.
556 Seller rejection: This offer was presented to Seller on _____, 20 ____ at ___:___ a.m./p.m. and rejected on _____
557 _____, 20 ____ at ___:___ a.m./p.m. *[SELLER INITIALS]*

558 © 2018 Illinois Real Estate Lawyers Association. All rights reserved. **Unauthorized duplication or alteration of this form or any portion thereof is prohibited.** Official form available at *www.irela.org*
559 (website of Illinois Real Estate Lawyers Association). Approved by the following organizations, December 2018: Belvidere Board of REALTORS® · Chicago Association of REALTORS® · Chicago Bar Association
560 · DuPage County Bar Association · Heartland REALTOR Organization · Grundy County Bar Association · Hometown Association of REALTORS® · Illinois Real Estate Lawyers Association · Illini Valley
561 Association of REALTORS® · Kane County Bar Association · Kankakee-Iroquois-Ford County Association of REALTORS® · Mainstreet Organization of REALTORS® · McHenry County Bar Association ·
562 North Shore-Barrington Association of REALTORS® · North Suburban Bar Association · Northwest Suburban Bar Association · Oak Park Area Association of REALTORS® · REALTOR® Association of
563 the Fox Valley, Inc. · Three Rivers Association of REALTORS · Will County Bar Association ·

Address: **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653**      v7.0
Page 13 of 13





### Illinois REALTORS®
## RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT
### (765 ILCS 77/35)

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES' RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW, SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY THE SELLER CREATES LEGAL OBLIGATIONS ON THE SELLER; THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address:  3817 S Ellis Ave unit 302

City, State & Zip Code:  Chicago, IL 60653

Seller's Name:  Aja Carr Favors, not individually but as Ch 7 Trustee

This Report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _____June 26_____, 20 21, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form, a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes" (correct), "no" (incorrect), or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| | YES | NO | N/A | |
|---|---|---|---|---|
| 1. | | | ✓ | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | | ✓ | | I am aware of flooding or recurring leakage problems in the crawl space or basement. |
| 3. | | ✓ | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | | ✓ | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | | ✓ | | I am aware of leaks or material defects in the roof, ceilings, or chimney. |
| 6. | | ✓ | | I am aware of material defects in the walls, windows, doors, or floors. |
| 7. | | ✓ | | I am aware of material defects in the electrical system. |
| 8. | | ✓ | | I am aware of material defects in the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | | ✓ | | I am aware of material defects in the well or well equipment. |
| 10. | | ✓ | | I am aware of unsafe conditions in the drinking water. |
| 11. | | ✓ | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | | ✓ | | I am aware of material defects in the fireplace or wood burning stove. |
| 13. | | ✓ | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | | ✓ | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | | ✓ | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | | ✓ | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | | ✓ | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | | ✓ | | I am aware of underground fuel storage tanks on the property. |
| 21. | | ✓ | | I am aware of boundary or lot line disputes. |
| 22. | | ✓ | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |
| 23. | | ✓ | | I am aware that this property has been used for the manufacture of methamphetamine as defined in Section 10 of the Methamphetamine Control and Community Protection Act. |

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

FORM 108 (7/28/16) COPYRIGHT ILLINOIS REALTORS®          Page 1 of 4

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:

*AS - IS ; Bankruptcy Sale*

Check here if additional pages used: _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: _____ *; Atty for Ch. 7 Trustee* _____ Date: *6/26/23*

Seller: _____ Date: _____

THE PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. THE PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: *Kennedy Harris* _____ Date: 07/15/2023 Time: _____

Prospective Buyer: _____ Date: _____ Time: _____

A COPY OF ARTICLE 2 OF THE RESIDENTIAL REAL PROPERTY DISCLOSURE ACT IS AFFIXED HERETO AND SHOULD BE REVIEWED BY PROSPECTIVE BUYER.

## RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
### ARTICLE 2: DISCLOSURES
765 ILCS 77/5 *et seq.*

**Section 5. Definitions:** As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"Residential real property" means real property improved with not less than one nor more than four residential dwelling units: units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit. The term includes a manufactured home as defined in subdivision (53) of Section 9-102 of the Uniform Commercial Code that is real property as defined in the Conveyance and Encumbrance of Manufactured Homes as Real Property and Severance Act.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

**Section 10. Applicability.** Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale-contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

**Section 15. Applicability; Exceptions.** The provisions of this Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgment, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgment or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

**Section 20. Disclosure Report; Completion; Time of Delivery.** A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

**Section 25. Liability of seller.**

(a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy, or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

**Section 30. Disclosure supplement.** If, prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

**Section 35. Disclosure report form. . . .[omitted]**

**Section 40. Material defect.** If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all the earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

**Section 45. Effect of Act on Other Statutes or Common Law.** This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

**Section 50. Disclosure Report; Method of Delivery.** Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

(1) personal or facsimile delivery to the prospective buyer;

(2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement; or

(3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to an authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

**Section 55. Violations and damages.** If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

**Section 60. Limitation of Action.** No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

**Section 65. Disclosure Report Form; Contents; Copy of Act.** A copy of this Act, excluding Section 35, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Date provided to Buyer: 07/15/2023

Seller: _____ , Atty for Ch.7 trustee



# ILLINOIS REALTORS®
## DISCLOSURE OF INFORMATION AND ACKNOWLEDGEMENT
### LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS



**Lead Warning Statement**
*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

Property Address: 3817 S Ellis Ave unit 302, Chicago, IL 60653

**Seller's Disclosure (initial)**

(a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

*KH* (c) Purchaser has received copies of all information listed above.

*KH* (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home.*

*KH* (e) Purchaser has (check one below):

☑ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (initial)**

*AW* (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

Seller _____ Date 6/26/23      Purchaser *Kennedy Harris* Date 07/15/2023

Seller _____ Date _____      Purchaser _____ Date _____

Agent *Adam Woods* Date 6/1/23      Agent *Elizabeth Charles* Date 07/15/2023

(This disclosure form should be attached to the Contract to Purchase)      1/1
FORM 420 (7/28/16) **COPYRIGHT ILLINOIS REALTORS®**



## ILLINOIS REALTORS®
## DISCLOSURE OF INFORMATION ON RADON HAZARDS
(For Residential Real Property Sales or Purchases)



**Radon Warning Statement**

*Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.*

*The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.*

**Seller's Disclosure (initial each of the following which applies)**

_____ (a)  Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain).

_____ (b)  Seller has provided the purchaser with the most current records and reports pertaining to elevated radon concentrations within the dwelling.

_____ (c)  Seller either has no knowledge of elevated radon concentrations in the dwelling or prior elevated radon concentrations have been mitigated or remediated.

_____ (d)  Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment (initial each of the following which applies)**

*KH* (e)  Purchaser has received copies of all information listed above.

*KH* (f)  Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's Acknowledgement (initial IF APPLICABLE)**

*AW* (g)  Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

Seller _____   Date _6/26/25_

Seller _____   Date _____

Purchaser _Kennedy Harris_   Date _07/15/2023_

Purchaser _____   Date _____

Agent _Adam Wohd_   Date _6/1/23_

Agent _Elizabeth Charles_   Date _07/15/2023_

Property Address: _3817 S Ellis Ave unit 302_

City, State, Zip Code: _Chicago, IL 60653_



## MAINSTREET ORGANIZATION OF REALTORS®
### INTENT TO ESCALATE
*[NOT INTENDED TO BE A BINDING CONTRACT]*



1    To Seller: _____

2    Regarding Property Address: **3817 S ELLIS Ave, Unit 302, Chicago, IL 60653**

3    In the event that prior to Seller's Acceptance of my/our Offer to Purchase the above property, the Seller receives one
4    or more Competing Offers (A Competing Offer must be a bona fide, arm's length, written offer containing all terms
5    necessary for an enforceable agreement) with terms acceptable to Seller and from which Seller would receive a higher
6    Net (contract sales price less any seller concessions) than the Net reflected in my/our offer, we hereby advise the Seller:

7    •   I/We intend to increase our offer to an amount that is $ **1000**_____ more   than   the
8       highest Competing Offer. My/Our offer shall not exceed *[CHECK ONE]*:

9       ☐ undisclosed amount;

10      ☒ $ **250,000**_____.

11    •   Upon receipt of a copy of the highest Competing Offer, I/we intend to deliver a written offer reflecting the
12       increased purchase price within **12**____ hours *[THE HOURS BETWEEN 10 P.M. AND 8 A.M. ARE NOT*
13       *CONSIDERED WHEN CALCULATING THE TIME FOR THE DELIVERY OF THE RESPONSE BY THE BUYER]*. Unless my/our
14       written offer does not contain a financing contingency, I/we will include an updated lender pre-approval letter
15       showing qualifications for the new purchase price.

16    •   A contract shall not be deemed in full force and effect until the Seller executes and delivers the fully executed
17       amended offer described in the preceding sub-paragraph.

18    Respectfully Submitted,

19    BUYER: *Kennedy Harris*_____    DATE: ___07/15/2023_____

20    BUYER: _____    DATE: _____

21    Notice and copy of Competing Offer to be sent to:

22    **sissy@noahrobinsongroup.com**_____
23    Buyer Broker E-mail

24    *[OPTIONAL]* Notice of transmission of the above may be texted to:

25    **312-550-8720**_____
26    Buyer Broker Cell Phone

DigiSign Verified - 0519e95b-824a-4988-a774-8a1320bd6fe3

## BANKRUPTCY RIDER

(3817 S Ellis Ave unit 302, Chicago, IL 60653)

Notwithstanding anything to the contrary in the contract for sale (the "Contract") for the real property commonly known as 3817 S Ellis Ave unit 302, Chicago, IL 60653 (the "Real Estate").

A. All references to Seller in the Contact and this Addendum means Aja Carr Favors not individually but as Bankruptcy Trustee of the Bankruptcy Estate of Dawn Joi, Case No. 23-01210 pending in the Northern District of Illinois, Eastern Division (the "Bankruptcy Case").

B. The sale contemplated by the Contract is contingent upon an order being entered by the Bankruptcy Court for the Northern District of Illinois Eastern Division ("Bankruptcy Court") approving the Contract and authorizing the Trustee to complete the sale that was not appealed or a motion to vacate filed within 14 days of the entry of the order. ("Final Order"). Closing shall be no sooner than 14 days after Seller obtains a Final Order.

C. Seller's failure to obtain approval of the Contract in the Bankruptcy Case shall not be an event of default by Seller, and the Seller may terminate the contract if the approval is not obtained in the Bankruptcy Case.

D. No real estate broker's commission or other compensation or reimbursement of expenses to any broker shall be due and payable except upon approval of the Contract in the Bankruptcy Case, closing of the sale, and disbursement of the proceeds of sale to Aja Carr Favors not individually but as Bankruptcy Trustee of the Bankruptcy Estate of Dawn Joi at closing.

E. The Real Estate shall be sold "as is/where is", without any warranties of any kind or nature, except as to title.

F. Seller is not providing buyer with a plat of survey and real estate taxes shall be prorated at 100%.

G. Any further request for credits will must be made prior to Bankruptcy Court approval of the sale.

H. Seller will deliver the property in the condition that it is in on the date of acceptance of this Contract. In the event the property is not in the same condition as the date of acceptance, Buyers only remedy will be to provide seller with written notice of termination of the contract.

SELLER:

*Jud Huj — Atty for Ch. 7 Trustee*

AJA CARR FAVORS, NOT
INDIVIDUALLY BUT AS CHAPTER 7
TRUSTEE OF THE BANKRUPTCY
ESTATE OF DAWN JOI

Dated: 7/17/23

BUYER:

*Kennedy Harris*

BY: **Kennedy Harris**

Dated: 07/18/2023